### BENNETT v. SCHOELLKOPF.

(Supreme Court, Appellate Division, Fourth Department. December 15, 1896.)

LANDLORD AND TENANT—LEASE OF DOCK—EVICTION.

Defendant leased from plaintiff a dock built by plaintiff in the Erie Basin, being a part of the lake protected by a state breakwater, and constituting a part of the canal system of the state, under license from the canal commissioners, which reserved the right in the state to retake possession. The dock was accessible to vessels of light draught only, the license providing that it should not approach within 100 feet of the channel of the basin used by larger vessels, which facts were known to defendant. The lease provided that, in case of eviction of defendant by the state, no further rent should be required. *Held*, that the refusal of the state to permit defendant to deepen the water around the dock, so as to allow of its use by larger vessels, was not an interference with the use of the property which excused him from payment of rent.

Exceptions from superior court of Buffalo.

Action by Lewis J. Bennett against Louis Schoellkopf. The court directed a verdict for defendant, and plaintiff moves for a new trial

on exceptions ordered to be heard in the first instance by the general
term.     Granted.

Action to recover for an installment of rent claimed to be due from the de-
fendant to the plaintiff by virtue of a lease of what was known as the "Bennett
Dock," which is one of the series of piers or docks situate in the city of Buffalo,
built near the state breakwater, and extending into the state waters of the Erie
Basin, which is formed by the state breakwater, and which separates its waters
from the main waters of Lake Erie. The dock is about 400 feet in length and
50 feet in width, and was, on the easterly side of the channel, some 18 feet in
depth, along which the vessels from the lake passed. The water immediately
around the dock was shallow, and not of sufficient depth to permit the large
lake vessels to moor to it, but was used for light vessels, canal boats, and a
floating elevator, which drew about eight feet of water. The dock was built
by the plaintiff under authority granted by the canal commissioners of the
state of New York in two resolutions made by them, one made December 20,
1867, and the other April 14, 1868. The resolution of December, 1867, gave the
plaintiff permission to construct the dock, but the canal commissioners reserved
the right "to enter into possession of the premises granted wherever it might
be necessary for the purpose of making repairs, or whenever the state may
require the same for commercial purposes, or on failure on part of said Bennett
[the plaintiff] to make the improvement contemplated [the dock] within rea-
sonable time." In the April resolution, which was made on the application of
Mr. Bennett and another, asking additional privileges in the Erie Basin, it was
provided for a further reservation by the canal commissioners of the right to
enter into possession of the premises whenever the canal commissioners in
charge thereof should deem it for the best interests of the state. Both resolu-
tions provided that the dock or the docks to be built under the permission
granted should not approach nearer than 100 feet of the channel above referred
to. The lease was under seal, and dated the 1st day of June, 1894, and provided
for the leasing of the dock and dock privileges from the plaintiff to the defend-
ant for the term of five years for a rent of $300 for the first year and for $600
for each succeeding year of the term, to be paid semiannually, with the right of
renewal reserving the right of the elevator to moor at such dock, and reciting
that the defendant was entitled to "any and all rights, privileges, easements,
licenses, grants, appurtenances, and hereditaments given to or vested in the
said Lewis J. Bennett by virtue of any and all permissions, grants, convey-
ances, easements, or estate, whether created or vested in Lewis J. Bennett
verbally or in writing under and pursuant to resolutions of the canal commis-
sioners of the state of New York" (referring to them). On the same day of the
execution of this lease, and as a supplement thereto, the parties to this action
entered into a further instrument in writing, whereby it was provided as follows:
"That if Louis Schoellkopf [the defendant] shall at any time during the continu-
ance of the said lease be removed or rejected from the premises demised in said
lease by legal proceedings taken for that purpose, or his possession thereof shall
cease by the exercise of its sovereignty by the state and of such legal proceed-
ings, then no further rent shall become due under the said lease. And it is un-
derstood that this clause is to be treated as an exception to the clause calling
for the payment of rent in the said lease." This instrument contained the
further provision to the effect that, in case of litigation against any person
owning, holding, or occupying the premises rented, all expenses of such liti-
gation was to be borne by the defendant, who was to have the control of the
litigation. And it was further provided that the defendant "agrees to use his
best endeavors to protect and to secure the continuance of the license, permis-
sion, and grant heretofore made to said first party [the plaintiff] of the right
to use, improve, and occupy the certain portion of the breakwater and Erie
Basin described in the lease this day executed between the parties hereto."
The Erie Basin and the premises covered by the dock were a part of the canal
system of the state, and the dock and the water surrounding it were con-
nected with the Erie Canal proper by means of slips, and jurisdiction over
the whole thereof, under the laws of this state, vested in the canal commis-
sioners. The defendant, at the time of the execution of these instruments,
was fully aware of the rights acquired from the state by the plaintiff, the

depth of water surrounding the dock, the location of the channel used by the larger vessels, and for what purpose the dock was then being and had been used. There was no condition or stipulation, either in the lease or the supplemental contract, concerning the dredging, or to deepen the water around the dock, or in connection with it. The defendant entered into possession of the premises leased by certain acts of ownership over them, and continued such possession until the trial of this action. Unless the defendant was excused from paying rent under the conditions of the contract, there was concededly due the plaintiff the sum of $300, with interest from June 1, 1895, the rent prior to June 1, 1895, having been paid by the defendant. The action was instituted in the superior court of Buffalo, and was a legal action, brought to recover rent. The defense alleged in the answer was that the defendant was excused from paying rent after July 1, 1895, by reason of the interference of the superintendent of canals in preventing the defendant from deepening the water about the dock so as to permit the approach of deep-draught lake vessels. There was no conflict in the evidence upon the trial, which was to the effect that about the 1st of July, 1895, one McDonough, who was assistant superintendent upon the canals, and had charge of that portion of the canal system embraced within the controversy in this action, discovering the defendant attempting to dredge in the vicinity of the dock in order to deepen the water so that deep-draught vessels could approach the dock, and also dredging near the breakwater, deeming that injury might come to the interests of the state by reason of such dredging, directed that the work be suspended, forbade the dredging, and, upon the defendant insisting upon continuing the dredging, threatened to interfere by force, and prevent it. This act the defendant claimed was an interference with his right to use the dock, and excused him from paying the rent claimed in this action. The trial court sustained the defendant in this contention. Both parties requested the direction of a verdict from the court. The court directed a verdict for the rent due up to the time of the interference with dredging by the state for the sum of $37.50, to which direction the plaintiff excepted, and the trial court ordered the exceptions to be heard in the first instance at the general term, and suspended judgment in the meantime. It was stipulated upon the trial and admitted by the defendant that the state had in no manner interfered with the defendant's rights under said lease, except in the matter of dredging. No action or other legal proceeding was taken by the state to interfere with the defendant's use of the premises leased, but it was insisted by the defendant that the interference by the assistant superintendent were such legal proceedings as contemplated by the contract.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

John C. Hubbell, for plaintiff.
Charles P. Norton, for defendant.

WARD, J. It is apparent that, unless the defendant's contention that the act of the assistant superintendent of canals excused the defendant from the payment of the rent stipulated in the lease after the dredging had ceased can be sustained, we must sustain the exceptions of the plaintiff to the verdict as directed by the trial court. The defendant insists that, as he was prevented by the action of the state authorities from making the use of the dock available for deep-draught vessels,—such vessels as were used in the commerce upon the Great Lakes,—he was deprived of the beneficial interests in the dock, and the real purpose of his contract with the plaintiff failed; that the leasing of the dock by the plaintiff conferred the appurtenant right upon the defendant to so deepen the water as to permit the approach of the lake vessels to the dock, and

that that right was within the spirit and purview of the contract between the parties; and being deprived of that right was an eviction, or, if not an eviction, a defense on the part of the defendant as against the plaintiff's claim for rent, as being an act of sovereignty exercised by the state, within the provisions of the supplemental contract. In the absence of any stipulation in the contract in regard to the dredging, and in the face of the provision in the contract that no dock was to be built within 100 feet of the channel, and in the face of the fact that the precise situation of the dock, the use to which it had been appropriated, the depth of the surrounding water, and the canal rights of the state authorities in the premises, all of which was known to the defendant when he entered into the lease, we cannot see how the defendant's contention can prevail. It is elementary that the tenant, while in possession of the demised premises, cannot dispute his landlord's title, or refuse the payment of rent, except upon the violation of some stipulation of the contract itself which excuses him. The defendant took the premises, and stipulated to pay the rent, in the condition in which the premises were at the time of the making of the lease. His rights under the contract are measured and determined by its terms. The canal authorities were not seeking to deprive the defendant of any privileges leased to him by the plaintiff, or interfering with the subject-matter of the lease. They were simply exercising a power essential to the protection of the public interests, and preserving the conditions that existed with reference to the leased property as they existed when the lease was executed. It was plainly contemplated by the supplemental contract that the state authorities might interfere with the beneficial use of the dock in question, and the defendant stipulates, as we have seen, "to use his best endeavors to protect and to secure the continuance of the license, permission, and grant heretofore made to the said first party of the right to use, improve, and occupy the certain portion of breakwater and Erie Basin described in the lease." The case of Mattoon v. Munroe, 21 Hun, 74, is a strong authority to sustain the plaintiff's position here. Judge Hardin, in an exhaustive opinion, upon facts somewhat similar to those in the case at bar, reaches conclusions which should prevail here. And reference may profitably be made in this connection to Tilyou v. Reynolds, 108 N. Y. 558, 15 N. E. 534; McKenzie v. Hatton, 141 N. Y. 6, 35 N. E. 929; People v. New York & S. I. Ferry Co., 68 N. Y. 71; Gallup v. Railway Co., 65 N. Y. 1; Gilhooley v. Washington, 4 N. Y. 217.

These views lead to the conclusion that the plaintiff's exceptions should be sustained, and that the verdict be set aside, and a new trial granted, with costs to abide the event. All concur.